ROBERT C. WOODS, an Infant, by ESTELLE WOODS, His Guardian ad Litem, Appellant, *v.* JOSEPH LANCET, Respondent.

Argued October 4, 1951; decided December 6, 1951.

*Ruth Gottdiener* for appellant. I. A viable child, injured while *en ventre sa mere,* who survives such injury, may recover for injuries suffered by reason of the negligence of another. (*Bonbrest* v. *Kotz,* 65 F. Supp. 138; *Williams* v. *Marion R. T., Inc.,* 152 Ohio St. 114; *Verkennes* v. *Corniea,* 229 Minn. 365; *Damasiewicz* v. *Gorsuch,* 79 A. 2d 550 [Md.] ; *Cooper* v. *Blanck,* 39 So. 2d 352 [La.] ; *Scott* v. *McPheeters,* 33 Cal. App. 2d 629.) II. The New York courts have always recognized the paramount interests of the infant. (*Piper* v. *Hoard,* 107 N. Y. 73; *Quinlan* v. *Welch,* 141 N. Y. 158; *Drobner* v. *Peters,* 194 App. Div. 696; *Nugent* v. *Brooklyn Heights R. R. Co.,* 154 App. Div. 667; *Kujek* v. *Goldman,* 150 N. Y. 176.)

*Louis Helfenstein* and *Norman Lustig* for respondent. An unborn child cannot successfully maintain a cause of action for personal injuries while *en ventre sa mere.* (*Drobner* v. *Peters,* 232 N. Y. 220; *Matter of Roberts,* 158 Misc. 698; *Stanford* v. *St. Louis-San Francisco Ry. Co.,* 214 Ala. 611; *Scott* v. *McPheeters,* 33 Cal. App. 2d 629; *Smith v. Luckhardt,* 299 Ill. App. 100; *Newman* v. *City of Detroit,* 281 Mich. 60; *Buel* v. *United Rys. Co.,*

248 Mo. 126; *Stemmer* v. *Kline,* 128 N. J. L. 455; *Krantz* v. *Cleveland A. C. Bus Co.,* 32 Ohio N. P. [N. S.] 445; *Berlin* v. *Penney Co.,* 339 Pa. 547; *Gorman* v. *Budlong,* 23 R. I. 169; *Magnolia Coca Cola Bottling Co.* v. *Jordan,* 124 Tex. 347.)

DESMOND, J. The complaint served on behalf of this infant plaintiff alleges that, while the infant was in his mother's womb during the ninth month of her pregnancy, he sustained, through the negligence of defendant, such serious injuries that he came into this world permanently maimed and disabled. Defendant moved to dismiss the complaint as not stating a cause of action, thus taking the position that its allegations, though true, gave the infant no right to recover damages in the courts of New York. The Special Term granted the motion and dismissed the suit, citing *Drobner* v. *Peters* (232 N. Y. 220). In the Appellate Division one Justice voted for reversal with an opinion in which he described the obvious injustice of the rule, noted a decisional trend (in other States and Canada) toward giving relief in such cases, and suggested that since *Drobner* v. *Peters* (*supra*) was decided thirty years ago by a divided vote, our court might well re-examine it.

The four Appellate Division Justices who voted to affirm the dismissal below, wrote no opinion except that one of them stated that, were the question an open one and were he not bound by *Drobner* v. *Peters* (*supra*), he would hold that " when a pregnant woman is injured through negligence and the child subsequently born suffers deformity or other injury as a result, recovery therefor may be allowed to the child, provided the causal relation between the negligence and the damage to the child be established by competent medical evidence." (278 App. Div. 913.) It will hardly be disputed that justice (not emotionalism or sentimentality) dictates the enforcement of such a cause of action. The trend in decisions of other courts, and the writings of learned commentators, in the period since *Drobner* v. *Peters* was handed down in 1921, is strongly toward making such a recovery possible. The precise question for us on this appeal is: shall we follow *Drobner* v. *Peters,* or shall we bring the common law of this State, on this question, into accord with justice? I think, as New York State's court of last resort, we should make the law conform to right.

*Drobner* v. *Peters* (*supra*), like the present case, dealt with the sufficiency of a complaint alleging prenatal injuries, tortiously inflicted on a nine-month foetus, viable at the time and actually born later. There is, therefore, no material distinction between that case and the one we are passing on now. However, *Drobner* v. *Peters* must be examined against a background of history and of the legal thought of its time and of the thirty years that have passed since it was handed down. Early British and American common law gives no definite answer to our question, so it is not profitable to go back farther than *Dietrich* v. *North- ampton* (138 Mass. 14), decided in 1884, with an opinion by Justice HOLMES, and, apparently, the first American case. Actu- ally that was a death case, since the five-month infant, pre- maturely born, survived for a few minutes after birth. The principal ground asserted by the Massachusetts Supreme Court (138 Mass., at p. 17) for a denial of recovery was that " the unborn child was a part of the mother at the time of the injury " and that " any damage to it which was not too remote to be recovered for at all was recoverable by her " (the mother). A few years later (1890), in Ireland, the Queen's Bench Division, in a very famous holding, refused to allow a suit to be brought on behalf of a child born deformed as the result of an accident in defendant's railway coach, two of the Justices taking the ground that the infant plaintiff was not *in esse* at the time of the wrong, and the other two regarding the suit as one on the contract of carriage with no duty of care owing by the carrier to the unborn infant whose presence was unknown to defendant (*Walker* v. *Great Northern Ry. of Ireland,* 28 L. R. Ir. 69). A similar complaint was dismissed for similar reasons, and the dis- missal affirmed by the Appellate Division, Second Department, in *Nugent* v. *Brooklyn Heights R. R. Co.* (154 App. Div. 667, appeal dismissed 209 N. Y. 515). It is significant that the Appellate Division's opinion in the *Nugent* case (*supra*) indicates that, had it not been for the contract-of-carriage theory and its supposed consequences, the writer of the opinion would have favored recovery. Other strong support for just treatment of prenatal wrongs (of another kind) is found also in the 1893 opinion of Justice HAIGHT (later of this court) in *Quinlen* v. *Welch* (69 Hun 584); however, on appeal, this court found it unnecessary to pass on the point (141 N. Y. 158). There were, in the early

years of this century, rejections of such suits by other courts, with various fact situations involving before-birth traumas (see *Allaire* v. *St. Luke's Hosp.*, 184 Ill. 359; *Gorman* v. *Budlong*, 23 R. I. 169; *Stanford* v. *St. Louis-San Francisco Ry. Co.*, 214 Ala. 611; *Newman* v. *City of Detroit*, 281 Mich. 60; *Magnolia Coca Cola Bottling Co.* v. *Jordan*, 124 Tex. 347; *Buel* v. *United Rys. Co.*, 248 Mo. 126; *Lipps* v. *Milwaukee Elec. Ry. & Light Co.*, 164 Wis. 272) and, quite recently, Massachusetts has reaffirmed the *Dietrich* rule (*Bliss* v. *Passanesi*, 326 Mass. 461). The movement toward a more just treatment of such claims seems to have commenced with the able dissent in the *Allaire* case (*supra*), which urged that a child viable but *in utero*, if injured by tort, should, when born, be allowed to sue; and the movement took impetus from the Wisconsin court's statement in the *Lipps* opinion (*supra*), that it was restricting its holding (of nonrecovery) to a nonviable child. Thus, when *Drobner* v. *Peters* came to this court in 1921, there had been no decisions upholding such suits, although the two New York lower court rulings above cited (*Nugent* and *Quinlen* cases, *supra*), were favorable to the position taken by plaintiff here.

In *Drobner* v. *Peters* (*supra*), this court, finding no precedent for maintaining the suit, adopted the general theory of *Dietrich* v. *Northampton* (*supra*), taking into account, besides the lack of authority to support the suit, the practical difficulties of proof in such cases, and the theoretical lack of separate human existence of an infant *in utero*. It is not unfair to say that the basic reason for *Drobner* v. *Peters* was absence of precedent. However, since 1921, numerous and impressive affirmative precedents have been developed. In California (*Scott* v. *McPheeters*, 33 Cal. App. 2d 629) the Court of Appeal allowed the suit — reliance was there put on a California statute but that statute was not directly in point, since it directed only that " a child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth." That California statute merely codified an accepted and ancient common-law rule (see *Stedfast* v. *Nicoll*, 3 Johns. Cas. 18, 23, 24) which, for some reason, has not, at least in our court, been applied to prepartum injuries tortiously inflicted. In 1949, the Ohio Supreme Court (*Williams* v. *Marion R. T., Inc.*, 152 Ohio St. 114, rule reaffirmed by the same court

in *Jasinsky* v. *Potts*, 153 Ohio St. 529) and Minnesota's highest tribunal (*Verkennes* v. *Corniea*, 229 Minn. 365), and in 1951, the Court of Appeals of Maryland (*Damasiewicz* v. *Gorsuch*, —— Md. ——, 79 A. 2d 550) and the Supreme Court of Georgia (*Tucker* v. *Carmichael*, 208 Ga. 201) upheld the right of an infant to bring an action like the one we are here examining, without statutory authorization. The Supreme Court of Canada had announced the same rule back in 1933 (*Montreal Tramways* v. *Leveille*, [1933] 4 Dom. L. Rep. 337). In New Jersey a strong five-to-ten dissent (written by the Chief Justice) unsuccessfully urged the same view (*Stemmer* v. *Kline*, 128 N. J. L. 455 [1942]). In England there seems to be no controlling precedent (see Professor Winfield's comprehensive article in 4 U. of Toronto L. J. [1941–1942] 285 *et seq.*). Of law review articles on the precise question there is an ample supply (see 20 Minn. L. Rev. [Feb., 1936] 321–322; 34 Minn. L. Rev. [Dec., 1949] 65–66; 48 Mich. L. Rev. [Feb., 1950] 539–541; 35 Cornell L. Q. [Spring, 1950] 648–654; 1951 Wis. L. Rev. [May] 518–528; 50 Mich. L. Rev. [Nov., 1951] 166–167). They justify the statement in Prosser on Torts, at page 190, that: '' All writers who have discussed the problem have joined in condemning the existing rule, in maintaining that the unborn child in the path of an automobile is as much a person in the street as the mother, and urging that recovery should be allowed upon proper proof.''

What, then, stands in the way of a reversal here? Surely, as an original proposition, we would, today, be hard put to it to find a sound reason for the old rule. Following *Drobner* v. *Peters* (*supra*) would call for an affirmance but the chief basis for that holding (lack of precedent) no longer exists. And it is not a very strong reason, anyhow, in a case like this. Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game, but what has that to do with bringing to justice a tort-feasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals? Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case. Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it (*Rumsey* v. *New York & N. E. R. R. Co.*, 133 N. Y. 79, 85, 86, and see *Klein* v. *Maravelas*, 219 N. Y. 383). That opinion

notes that Chancellor KENT, more than a century ago, had stated that upwards of a thousand cases could then be pointed out in the English and American reports " ' which had been overruled, doubted or limited in their application ' ", and that the great Chancellor had declared that decisions which seem contrary to reason " ' ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.' " And Justice SUTHER-LAND, writing for the Supreme Court in *Funk* v. *United States* (290 U. S. 371, 382), said that while legislative bodies have the power to change old rules of law, nevertheless, when they fail to act, it is the duty of the court to bring the law into accordance with present day standards of wisdom and justice rather than " with some outworn and antiquated rule of the past ". No reason appears why there should not be the same approach when traditional common-law rules of negligence result in injustice (see *Hagopian* v. *Samuelson,* 236 App. Div. 491, 492, and see Justice STONE's article on " The Common Law in the United States ", 50 Harv. L. Rev. [1936], pp. 4–7).

The sum of the argument against plaintiff here is that there is no New York decision in which such a claim has been enforced. Winfield's answer to that (see U. of Toronto L. J. article, *supra,* p. 29) will serve : " if that were a valid objection, the common law would now be what it was in the Plantagenet period." And we can borrow from our British friends another mot : " When these ghosts of the past stand in the path of justice clanking their mediæval chains the proper course for the judge is to pass through them undeterred " (Lord ATKIN in *United Australia, Ltd.,* v. *Barclay's Bank, Ltd.,* [1941] A. C. 1, 29). We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice.

The same answer goes to the argument that the change we here propose should come from the Legislature, not the courts. Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule. Perhaps, some kinds of changes in the common law could not safely be made without the kind of factual investigation which the Legislature and not the courts, is equipped for. Other pro-

posed changes require elaborate research and consideration of a variety of possible remedies — such questions are peculiarly appropriate for Law Revision Commission scrutiny, and, in fact, the Law Revision Commission has made an elaborate examination of this very problem (1935 Report of N. Y. Law Revision Commission, pp. 449–476). That study was made at the instance of the late Chief Judge POUND of this court and was transmitted to the Legislature by the commission. Although made before the strong trend in favor of recovery had clearly manifested itself, the Law Revision Commission's comments were strongly in favor of the position taken in this opinion. The report, itself, contained no recommendations for legislation on the subject but that apparently was because the commission felt that it was for the courts to deal with this common-law question. At page 465, for instance, the report said: "The common law does not go on the theory that a case of first impression presents a problem of legislative as opposed to judicial power."

Two other reasons for dismissal (besides lack of precedent) are given in *Drobner* v. *Peters* (*supra*). The first of those, discussed in many of the other writings on the subject herein cited, has to do with the supposed difficulty of proving or disproving that certain injuries befell the unborn child, or that they produced the defects discovered at birth, or later. Such difficulties there are, of course, and, indeed, it seems to be commonly accepted that only a blow of tremendous force will ordinarily injure a foetus, so carefully does nature insulate it. But such difficulty of proof or finding is not special to this particular kind of lawsuit (and it is beside the point, anyhow, in determining sufficiency of a pleading). Every day in all our trial courts (and before administrative tribunals, particularly the Workmen's Compensation Board), such issues are disposed of, and it is an inadmissible concept that uncertainty of proof can ever destroy a legal right. The questions of causation, reasonable certainty, etc., which will arise in these cases are no different, in kind, from the ones which have arisen in thousands of other negligence cases decided in this State, in the past.

The other objection to recovery here is the purely theoretical one that a foetus *in utero* has no existence of its own separate from that of its mother, that is, that it is not "a being *in esse*". We need not deal here with so large a subject. It is to be

remembered that we are passing on the sufficiency of a complaint which alleges that this injury occurred during the ninth month of the mother's pregnancy, in other words, to a viable foetus, later born. Therefore, we confine our holding in this case to prepartum injuries to such viable children. Of course such a child, still in the womb is, in one sense, a part of its mother, but no one seems to claim that the mother, in her own name and for herself, could get damages for the injuries to her infant. To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact. This child, when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother. We agree with the dissenting Justice below that " To deny the infant relief in this case is not only a harsh result, but its effect is to do reverence to an outmoded, timeworn fiction not founded on fact and within common knowledge untrue and unjustified." (278 App. Div. 913, 914.)

The judgments should be reversed, and the motion denied, with costs in all courts.

LEWIS, J. (dissenting). I agree with the view of a majority of the court that prenatal injury to a child should not go unrequited by the one at fault. If, however, an unborn child is to be endowed with the right to enforce such requital by an action at law, I think that right should not be created by a judicial decision on the facts in a single case. Better, I believe, that the right should be the product of legislative action taken after hearings at which the Legislature can be advised, by the aid of medical science and research, not only as to the stage of gestation at which a foetus is considered viable, but also as to appropriate means — by time limitation for suit and otherwise — for avoiding abuses which might result from the difficulty of tracing causation from prenatal injury to postnatal deformity.

When, in England, the right — unknown to the common law — was created which permitted suit to recover damages for negligently causing the death of a human being, it was accomplished by legislative action.[1] In our own jurisdiction a similar right of action — carefully limited as to time and by other measures to prevent abuse — has long been the subject of statute law

---

[1] Lord Campbell's Act, 9 & 10 Vict., ch. 93.

adopted by the process incident to statutory enactment.[2]  That same process, in my opinion, is peculiarly appropriate for the solution of the problem now before us where unknown factors abound.

Accordingly, I dissent and vote for affirmance.

LOUGHRAN, Ch. J., DYE, FULD and FROESSEL, JJ., concur with DESMOND, J.; LEWIS, J., dissents in opinion in which CONWAY, J., concurs.

Judgments reversed, etc.

---

[2] Decedent Estate Law, art. 5.