LEONARD KELLY, JR., an Infant, by LEONARD KELLY, His Guardian ad Litem, Respondent, *v.* LAWRENCE GREGORY, Appellant.

Third Department, November 12, 1953.

*Kenneth H. Holcombe* for appellant.

*John R. Cummins* for respondent.

BERGAN, J. The right of a person to recover for a prenatal injury inflicted during the ninth month of the mother's pregnancy was upheld in 1951 by the Court of Appeals; the case before us seeks to advance the area of recovery to injury at a much earlier stage of the life of the foetus, to the third month of pregnancy. We think the same rule should govern both cases.

The decision of the Court of Appeals was distinctly limited to injuries in that area of pregnancy in which the child is viable (*Woods* v. *Lancet,* 303 N. Y. 349). The opinion stated: " we confine our holding in this case to prepartum injuries to such viable children." (P. 357.) By definition viability as applied to a foetus is " such a stage of development as to permit continued existence, under normal conditions, outside of the womb." (Barnhart, *American College Dictionary.*)

The complaint alleges that plaintiff was injured by the negligence of the defendant in operating an automobile which struck and knocked down plaintiff's mother while she was walking over a crosswalk. She was then in the third month of her pregnancy. The result, so the complaint alleges, was that plaintiff was born weakened and debilitated and otherwise physically handicapped. While the point at which the foetus becomes viable has been of usefulness in drawing some legal distinctions, the underlying problem that has usually troubled the Judges who have written on the subject of recovery for prenatal injuries, has been in fixing the point of legal separability from the mother.

We ought to be safe in this respect in saying that legal separability should begin where there is biological separability. We know something more of the actual process of conception

and foetal development now than when some of the common-law cases were decided; and what we know makes it possible to demonstrate clearly that separability begins at conception.

The mother's biological contribution from conception on is nourishment and protection; but the foetus has become a separate organism and remains so throughout its life. That it may not live if its protection and nourishment are cut off earlier than the viable stage of its development is not to destroy its separability; it is rather to describe conditions under which life will not continue. Succeeding conditions exist, of course, that have that result at every stage of its life, postnatal as well as prenatal. The complaint here, in alleging that plaintiff was in being in the third month of his mother's pregnancy, alleges a conclusion of fact consistent with generally accepted knowledge of the process.

The logic of some of the cases sustaining the right of recovery where the injury occurred after the foetus was viable seems to be that if at the instant of injury the foetus were outside the womb it could live and would then be treated at law as an individual in being. But no case imposed as a necessity the concomitant condition that actual miscarriage must coincide with the injury. Hence the basis of separability discussed was often a theory rather than a fact.

Many of these cases were collated and discussed in the noted dissenting opinion of Mr. Justice HEFFERNAN in the Appellate Division in *Woods* v. *Lancet* (278 App. Div. 913) which led to the appeal to the Court of Appeals and on the reasoning of which the decision of that court was in part based (303 N. Y. at p. 357). The dissent of BOGGS, J., in *Allaire* v. *St. Luke's Hosp.* (184 Ill. 359) is based on his view that viability be treated as the point of separability. The opinion, as Judge HEFFERNAN noted, has frequently been quoted and relied upon.

In some groups of cases where it became necessary to decide when the separate legal entity of life began, the Judges at common law took a view quite harmonious with present biological theory. In matters of descent and distribution they held that the child was in being from the time of conception if later born alive under conditions in which continuance in life was to be reasonably expected (10 Am. & Eng. Ency. of Law, p. 624).

There were some highly artificial distinctions at law, as for instance, the effect of the birth of a posthumous child on one who took a remainder by purchase and one who took by descent. Some of these are discussed by Judge KENT in *Stedfast* v. *Nicoll* (3 Johns. Cas. 18, 26, 27).

The holding of the Court for the Correction of Errors in that case was that a posthumous child took the estate in remainder by devise in the same manner as if he had been born in the lifetime of his father. This early decision [1802] brought the law of New York on the question of devise in harmony with earlier English statutes and the decisions under them. It recognized that at common law in the case of an unborn child " the estate was allowed to vest in such heir until his birth ". (See concurring opinion of RADCLIFF, J., p. 24.)

It is to be noticed that no distinction between viability or nonviability was attempted to be drawn in determining the point of vestiture of a legal right. Conception and vestiture became coincidental in the full sense of that word.

The Supreme Court of Canada in affirming an award for prenatal injuries based its decision on the general prenatal rights of an injured person and not upon whether the injury had occurred after the biological point of viability had been reached. (*Montreal Tramways* v. *Leveille,* 4 D. L. R. 337 [1933].)

If the child born after an injury sustained at any period of his prenatal life can prove the effect on him of the tort, as for the purpose of this appeal and on the face of the complaint before us we must assume plaintiff will be able to do, we hold he makes out a right to recover.

The order should be affirmed, with $10 costs and disbursements.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Order affirmed, with $10 costs and disbursements.