WILLIAM P. SIMON ET AL. *v.* JOHN J. MULLIN

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 207096

Memorandum filed November 2, 1977

*Alexander A. Goldfarb,* for the plaintiffs.

*Kenny & Brimmer,* for the defendant.

BIELUCH, J. The second count of the plaintiffs' complaint is brought by William P. Simon, administrator of the estate of Anna Simon. It alleges a cause of action for personal injuries to the intestate, resulting in her death, which is claimed to have been caused by the defendant's negligence. Those injuries are stated to have been sustained by the decedent en ventre sa mere on September 6, 1975, when her mother, in the fourth month of pregnancy, was injured while a passenger in an automobile that was struck by the defendant's car. As a consequence of this collision, the mother suffered from intermittent vaginal bleeding and a premature rupture of her membranes, causing the spontaneous birth, on November 6, 1975, of the decedent. On behalf of Anna Simon, her administrator alleges that as a result of the defendant's negligence she (1) was born prematurely; (2) suffered acute respiratory distress; (3) endured pain and other suffering; and (4) received a profound shock to her nervous system, and other unknown injuries, all of which caused, contributed to and resulted in her death on November 7, 1975.

The defendant has demurred to this count of the plaintiffs' complaint on the ground that the decedent's mother was in the fourth month of pregnancy at the time of the accident and "no cause of action lies in this state for a non-viable fetus."

This precise question has never before been presented to the Connecticut courts. Although there has been no ruling from the Connecticut Supreme Court relating to a claim for injury even to a viable fetus, that is, one capable of living outside the mother's womb, the Superior Court has in four reported cases allowed an action against a negligent wrongdoer for injuries in this later stage of pregnancy. In so doing it departed from its 1947 holding

in *Squillo* v. *New Haven,* 14 Conn. Sup. 500, which had denied a right of action to a child after birth for injuries to it while en ventre sa mere. While admitting that cogent reasoning had been advanced in the case of *Bonbrest* v. *Kotz,* 65 F. Sup. 138 (D. D.C.), to support such right of recovery by a child, the court in *Squillo,* nevertheless, refused to follow the federal court holding. Instead, it chose to rely upon the earlier uniform denial of that action by courts of last resort in various jurisdictions, referring to law reports and the Restatement of Torts for precedents and authority. What the court failed to recognize was that in *Bonbrest* v. *Kotz,* supra, the tide of judicial opinion began to turn in favor of recovery for prenatal injuries to a viable fetus. "Indeed, it has been said that seldom in the law has there been such an overwhelming trend in such a relatively short period of time as there has been in the trend toward allowing recovery for pre-natal injuries to a viable fetus." 62 Am. Jur. 2d 614, Prenatal Injuries, § 2, citing *Wendt* v. *Lillo,* 182 F. Sup. 56 (N.D. Iowa).

The Superior Court has, since 1955, followed this trend. The precedent was first set in *Tursi* v. *New England Windsor Co.,* 19 Conn. Sup. 242. In that case a negligence suit was allowed a child for inju-ries received as a viable fetus of about eight months gestation. Thereafter, in *Prates* v. *Sears, Roebuck & Co.,* 19 Conn. Sup. 487, a wrongful death action was allowed to be maintained by the administrator of the estate of a child for its death which allegedly resulted from injuries to the viable fetus subse-quently born prematurely and surviving for five days. Only in the viability of the injured fetus does *Prates* differ from the present case. In *Gorke* v. *Le Clerc,* 23 Conn. Sup. 256, the ruling in *Prates* was extended to the estate of a child killed and caused to be born dead about two weeks before it

was due to be born.  Similarly, in *Hatala* v. *Markie-wicz,* 26 Conn. Sup. 358, the court overruled a demurrer attacking the right to bring an action in behalf of a child killed and caused to be stillborn about a month or two before its scheduled birth.

The swing initiated by *Bonbrest* v. *Kotz,* supra, has not, at least with respect to prenatal injuries suffered by children subsequently born alive, been limited to cases of injuries during viability. "Rather, the rule allowing a cause of action has frequently been extended to injuries incurred at any period of gestation." 62 Am. Jur. 2d 614, Prenatal Injuries, § 2. In cases of injury to a nonviable fetus, the trend to recovery by a child surviving birth usually has been a two-step progression in the jurisdiction.

The enlarged right of recovery for fetal injuries began in New York.  In *Woods* v. *Lancet,* 303 N.Y. 349, the Court of Appeals, in 1951, upheld the right of a child to recover for a prenatal injury inflicted during the ninth month of the mother's pregnancy. Two years later, the New York Supreme Court, Appellate Division, in *Kelly* v. *Gregory,* 282 App. Div. 542, had before it a claim by a minor child for prenatal injuries allegedly sustained when the defendant's automobile struck the child's mother during the third month of her pregnancy.  Referring to the earlier *Woods* decision, the court succinctly stated the new issue and its answer (p. 543) in these words:  "[T]he case before us seeks to advance the area of recovery to injury at a much earlier stage of the life of the foetus, to the third month of pregnancy.  We think the same rule should govern both cases."

A precedent was then established for recovery by a child for prenatal injuries received while a nonviable fetus.  Other jurisdictions have uniformly

followed this and successive authorities emanating from it, establishing by their progressive multiplicity a ruling principle of law. In 1956, the Supreme Court of Georgia was the first to follow this new legal path in *Hornbuckle* v. *Plantation Pipe Line Co.*, 212 Ga. 504, supporting a claim for injury in the sixth week of gestation. That court held (p. 504) that "[w]here a child is born after a tortious injury sustained at any period after conception, he has a cause of action." Thereafter, in 1958, the Supreme Court of New Hampshire gave its endorsement of the newly expanded scope of prenatal injury actions in *Bennett* v. *Hymers,* 101 N.H. 483. Relying on *Kelly* v. *Gregory,* supra, and *Hornbuckle* v. *Plantation Pipe Line Co.,* supra, the court ruled (p. 486) that "an infant born alive can maintain an action to recover for prenatal injuries inflicted upon it by the tort of another even if it had not reached the state of a viable fetus at the time of injury."

The Supreme Court of New Jersey next added its support to this new right of recovery in *Smith* v. *Brennan,* 31 N.J. 353. In its opinion the court comprehensively reviewed the development of the law pertaining to prenatal injuries from the original denial of any recovery in 1884 by Holmes, J., in the historic case of *Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14. After noting the break from this precedent in *Bonbrest* v. *Kotz,* 65 F. Sup. 138 (D. D.C.), the court made the observation (pp. 366–67), appropriate to the case now being considered, that "no jurisdiction which has approved recovery for injury to a viable fetus has later denied recovery to a child who survived an injury suffered before it was viable." Although the complaint in *Smith* v. *Brennan,* supra, did not allege, nor did the defendants admit, that the infant plaintiff was viable at the time of the alleged injury,

that did not matter in the view of the court (p. 367):
"Whether viable or not at the time of the injury,
the child sustains the same harm after birth, and
therefore should be given the same opportunity for
redress." Citing *Bennett* v. *Hymers,* supra, *Horn-
buckle* v. *Plantation Pipe Line Co.,* supra, and *Kelly*
v. *Gregory,* supra, in that order to emphasize their
respective recency, the court concluded (p. 368):
"Our position accords with the recent decisions of
a number of courts."

Acknowledging that *Smith* v. *Brennan,* supra,
"is a compendium of the present stance of the law,"
the Supreme Court of Pennsylvania relied upon it
to allow a minor child a right of action for injuries
inflicted when a fetus of one month. *Sinkler* v.
*Kneale,* 401 Pa. 267. Rhode Island followed the
landmark case of *Dietrich* v. *Inhabitants of North-
ampton,* supra, in disallowing actions for prenatal
injuries until 1966, when its Supreme Court for the
first time allowed such recovery, irrespective of the
child's viability at the time the injury occurred,
"in line with recent decisions." *Sylvia* v. *Gobeille,*
101 R.I. 76, 79, citing *Smith* v. *Brennan,* supra, *Sink-
ler* v. *Kneale,* supra, *Kelly* v. *Gregory,* supra,
*Hornbuckle* v. *Plantation Pipe Line Co.,* supra,
*Bennett* v. *Hymers,* supra, and other precedents.

Of particular importance is this change of direc-
tion as it is reflected in the later decisions of the
Supreme Judicial Court of Massachusetts con-
cerning the right to recover for prenatal injuries.
Its historical precedent in *Dietrich* v. *Inhabitants
of Northampton,* supra, denying that recovery, was
followed in subsequent cases on the basis of stare
decisis. See *Cavanaugh* v. *First National Stores
Inc.,* 329 Mass. 179; *Bliss* v. *Passanesi,* 326 Mass.
461. It was not until 1960 that the court overruled
its holding in *Dietrich.* In *Keyes* v. *Construction*

*Service, Inc.*, 340 Mass. 633, the court for the first time allowed an action by the administratrix of the estate of a minor child for prenatal injury to her intestate while a viable fetus. The court expressed the view (p. 637) that "the law of this Commonwealth should be in general in harmony with that of the large and growing proportion of the other States (allowing a right of action) . . . ." Continuing to follow the trend of other jurisdictions, the court, in 1967, extended this right of action to allow recovery for wrongful death owing to prenatal injuries to a nonviable fetus about three and one-half months in gestation where the child was born prematurely and lived for about two and one-half hours. *Torigian* v. *Watertown News Co.*, 352 Mass. 446. Again, the court relied upon the precedent set by the line of earlier cases that began with *Kelly* v. *Gregory*, 282 App. Div. 542 (N.Y.).

The well-established trend in support of a right of recovery by or behalf of a child born alive for prenatal injuries inflicted at any time of the pregnancy has continued unbroken to the present time. In each reported case the cited authorities in support of this extension of recovery have grown by accumulation. The Supreme Court of Michigan, in 1971, allowed an action by a child for prenatal injuries suffered during the fourth month of pregnancy. *Womack* v. *Buchhorn*, 384 Mich. 718. In one sweep of the judicial broom the court, on the authority of *Woods* v. *Lancet*, 303 N.Y. 349, not only overruled its previous denial, in *Newman* v. *City of Detroit*, 281 Mich. 60, of recovery for prenatal injuries to a viable fetus, but also extended that recovery for injuries to a nonviable fetus, on the basis of *Smith* v. *Brennan*, 31 N.J. 353. In Alabama the transition followed the two-step route. *Huskey* v. *Smith*, 289 Ala. 52, decided in 1972, for the first time recognized an action for the wrongful death of a viable

child. Thereafter, in 1973, the Supreme Court of Alabama extended this right of recovery to permit suit on behalf of a child, injured as a nonviable fetus, who survived for approximately fifty minutes after birth. *Wolfe* v. *Isbell*, 291 Ala. 327. In addition to relying upon the gamut of cases noted above from *Kelly* v. *Gregory*, 282 App. Div. 542, to *Torigian* v. *Watertown News Co.*, 352 Mass. 446, the court now, for the first time, cited (p. 331) this additional authority of recent date: "Originally the view of the Restatement of Torts was consistent with the early opinions on this matter holding that 'a person who negligently causes harm to an unborn child is not liable to such child for the harm.' . . . However, this view has apparently been changed to reflect what we have recognized as the judicial trend toward allowing recovery for prenatal injuries. In its more recent opinion the American Law Institute has rejected the viability criteria and opted merely for the requirement of live birth as the basis of the cause of action. See Restatement (Second) of Torts, § 869, p. 174–182 (Tent. Draft No. 16, 1970)."

Most recently Florida joined the parade of precedents. *Day* v. *Nationwide Mutual Ins. Co.*, 328 So. 2d 560 (Dist. Ct. App. Fla.), decided in 1976, allowed a negligence action by a minor for prenatal injuries suffered in the sixth week of gestation. Like other relevant precedents, this decision recounted the historical break from *Dietrich* v. *Inhabitants of Northampton*, 138 Mass. 14, by *Bonbrest* v. *Kotz*, 65 F. Sup. 138 (D. D.C.), and the further trend away from the viability threshold for recovery by children for prenatal injuries, observing (p. 561) that "seventeen jurisdictions now permit an action to be maintained for negligently inflicted prenatal injuries without regard to viability, and no jurisdiction which first seemed to limit recovery to those

instances involving a viable fetus has later denied recovery to a child who survived an injury suffered before it became viable." The court's statement confirming the two-step abandonment of the viability requirement by various jurisdictions was similarly made sixteen years earlier by the New Jersey court in *Smith* v. *Brennan,* 31 N.J. 353, 366–67, a strong consideration in the situation presently existing before this court.

The law of negligence is primarily common law, whose great virtue is its adaptability to the conditions and needs of changing times. *Smith* v. *Brennan,* supra, 362. Negligence is common law, and the common law has been molded and changed and brought up to date in many other cases. *Womack* v. *Buchhorn,* 384 Mich. 718, 724. The common law is viable, capable of growing and developing. The development of the principle of law that now permits recovery by or on behalf of a child born alive for prenatal injuries suffered at any time after conception, without regard to the viability of the fetus, is a notable illustration of the viability of our common law.

The demurrer of the defendant to the second count of the plaintiffs' complaint is, accordingly, overruled.