## IN RE VALERIE D.*
## (9140)

SPALLONE, NORCOTT and LAVERY, Js.

Argued April 26—decision released August 27, 1991

*Sara R. Martin,* for the appellant (respondent mother).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Maureen D. Regula,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (petitioner).

*Jewel A. Gutman,* for the minor child.

NORCOTT, J. The respondent mother appeals from the judgment of the trial court finding her daughter, Valerie, to be a neglected child and terminating her parental rights with respect to that child. She challenges, in essence, the court's (1) ruling that her conduct while she was pregnant with Valerie can support a neglect petition or a petition for termination of parental rights and (2) factual findings. We affirm the judgment of the trial court.

The trial court could reasonably have found the following facts. Valerie was born on July 26, 1989. The birth was complicated by her passage of stool, or meconium, prior to delivery. If a baby inhales and swallows the meconium, severe, life threatening respiratory problems can result. In Valerie's case, although meconium aspiration did not occur, the passage of stool was most likely caused by the respondent's ingestion of cocaine after her water had broken, some eight to ten hours before delivery.

When Valerie was born she exhibited many classic signs of cocaine withdrawal. She was jittery, shaking, crying hard, breathing with difficulty and making no eye contact. A urine test showed that Valerie had been born with cocaine in her bloodstream.

On the basis of these facts, the department of children and youth services filed coterminous petitions for neglect and for termination of the respondent's parental rights on August 1, 1989.[1] The petitions alleged that

---

[1] The petitions also named Valerie's father as a respondent. Although he participated in the trial court proceedings, he is not a party to this appeal. We therefore refer to Valerie's mother as the respondent.

Valerie was abused, neglected and uncared for as a result of the respondent's prenatal drug use and sought termination of the respondent's parental rights because "the child has been denied by reason of act or acts of commission or omission, the care, guidance or control necessary for [her] physical, moral or emotional well being" in that she had sustained "nonaccidental or inadequately explained serious physical injury." The department later amended its petitions, additionally claiming that Valerie had been abandoned and that she did not have an ongoing parent-child relationship with the respondent.

After a hearing held over the course of several days between December 13, 1989, and February 21, 1990, the trial court rendered its decision orally from the bench on March 28, 1990, finding Valerie to be a neglected child under General Statutes § 46b-120 and terminating the respondent's parental rights pursuant to General Statutes §§ 17a-112 (formerly § 17-43a) and 45a-717 (formerly § 45-61f). In an articulation filed on July 30, 1990, the court further found that Valerie was abused, neglected and uncared for as those terms are used in § 46b-120. The court also terminated the respondent's parental rights on the basis of its findings that Valerie had sustained "nonaccidental or inadequately explained serious physical injury" as a result of the respondent's prenatal drug use; see General Statutes § 17a-112 (b) (3); and that no ongoing parent-child relationship existed between Valerie and the respondent. See General Statutes § 17a-112 (b) (4).[2] Finally, the court, relying on authority from other jurisdictions, noted that "[t]he fact that the act resulting in the detriment to the child occurred prior to birth does not require the conclusion that the child's condition *at* birth

[2] The court found that Valerie was not abandoned under the definition provided by General Statutes § 17a-112 (b) (1).

was other than that of a neglected child." (Emphasis in original.) The respondent appeals from the trial court's ruling.

The respondent first claims that the trial court improperly determined that her conduct while pregnant can support a petition for neglect or termination of parental rights. This issue has yet to be decided in this state. In order for us to answer this question, we must examine our statutes allowing petitions to be brought for neglect and termination of parental rights.

General Statutes § 46b-120 defines a neglected child as one who "(i) has been abandoned or (ii) is being denied proper care and attention, physically, educationally, emotionally or morally or (iii) is being permitted to live under conditions, circumstances or associations injurious to his well-being, or (iv) has been abused." A child may be found uncared for under that statute "who is homeless or whose home cannot provide the specialized care which his physical, emotional or mental condition requires." The statute defines "child" as "any person under sixteen years of age."

General Statutes § 17a-112 provides, in pertinent part, that parental rights may be terminated if "(3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for

the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." The definition of "child" applicable to that statute, found in General Statutes § 17a-1, is identical to that of § 46b-120.

Although no appellate court in this state has as of yet determined whether a petition for neglect or termination of parental rights can be predicated solely on a mother's prenatal conduct, trial courts in Connecticut and other states have addressed similar issues with respect to tort and criminal law. An infant who has sustained injuries prior to birth, whether the infant is viable or not at that time, has a cause of action in negligence against the alleged wrongdoer. *Simon* v. *Mullin*, 34 Conn. Sup. 139, 147, 380 A.2d 1353 (1977); *Tursi* v. *New England Windsor Co.*, 19 Conn. Sup. 242, 111 A.2d 14 (1955); see also *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 225 N.E.2d 926 (1967); *Womack* v. *Buchhorn*, 384 Mich. 718, 187 N.W.2d 218 (1971); *Bennett* v. *Hymers*, 101 N.H. 483, 147 A.2d 108 (1958); *Smith* v. *Brennan*, 31 N.J. 353, 157 A.2d 497 (1960); *Kelly* v. *Gregory*, 282 App. Div. 542, 125 N.Y.S.2d 696 (1953). Similarly, a wrongful death action can be brought on behalf of a child who dies as a result of prenatal injuries regardless of whether those injuries were sustained when the fetus was viable. *Kelly* v. *Gregory*, supra; *Hatala* v. *Markiewicz*, 26 Conn. Sup. 358, 224 A.2d 406 (1966); *Gorke* v. *Le Clerc*, 23 Conn. Sup. 256, 181 A.2d 448 (1962); *Prates* v. *Sears, Roebuck & Co.*, 19 Conn. Sup. 487, 118 A.2d 633 (1955); see also *Porter* v. *Lassiter*, 91 Ga. App. 712, 87 S.E.2d 100 (1955); *Presley* v. *Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976). These courts reasoned that " ' "[t]o deny the infant relief . . . is not only a harsh result but its effect is to do [justice] to an outmoded, timeworn fiction not founded on fact and within com-

mon knowledge untrue and unjustified." ' " *Tursi* v. *New England Windsor Co.,* supra, 247–48. "If no right of action is allowed, there is a wrong inflicted for which there is no remedy." Id., 245.

For different reasons of public policy, the Superior Court in *State* v. *Anonymous (1986-1),* 40 Conn. Sup. 498, 516 A.2d 156 (1986), held that an unborn but viable fetus is not a "person" within the meaning of the Connecticut statutes defining murder. Person is defined for the purpose of the homicide statutes as a "human being." General Statutes § 53a-3 (1). The court in *State* v. *Anonymous (1986-1)* found that "[i]n addition to the fact that the codes from which our Connecticut law was drawn limit the words 'human being' to those who have been born alive . . . Connecticut's legislature did not intend to define a 'human being' as an unborn but viable fetus." *State* v. *Anonymous (1986-1),* supra, 501. The court noted the seemingly inconsistent developments in tort law, reasoning that " '[d]iffering objectives . . . in tort and criminal law foster the development of different principles governing the same factual situation.' " Id., 505.

Because neglect proceedings and proceedings to terminate parental rights are neither tort nor criminal actions; see *In re Juvenile Appeal (85-2),* 3 Conn. App. 184, 485 A.2d 1362 (1985); we must now decide which of the above paths to follow in creating a rule of law to apply in these cases. The Connecticut legislature has stated that the policy underlying its neglect and termination statutes is, in pertinent part, "[t]o protect children whose health and welfare may be adversely affected through injury and neglect . . . ." General Statutes § 17a-101 (formerly § 17-38a). This rationale is akin to that of the cases allowing a child to recover for injuries sustained in utero, or, if those injuries result in death, allowing the child's representative to bring

a wrongful death action. See, e.g., *Gorke* v. *Le Clerc,* supra, 262; *Tursi* v. *New England Windsor Co.,* supra, 247. We therefore hold that a petition for neglect or termination of parental rights can be based solely on a mother's prenatal conduct.[3]

Our holding is supported by the reasoning of the United States Supreme Court in *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). In *Roe,* the court held that "[w]ith respect to the State's important and legitimate interest in potential life, the 'compelling' point is at viability. This is so because the fetus then presumably has the capability of meaningful life outside the mother's womb. State regulation protective of fetal life after viability thus has both logical and biological justifications." *Roe* v. *Wade,* supra, 163; see also *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 287, 455 A.2d 1313 (1983).[4]

Our Supreme Court, in addition, has recognized the state's "continuing parens patriae interest . . . in the well being of children." *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 318–19, 460 A.2d 1277 (1983). In this case, the state has a compelling interest in protecting Valerie, a living child born with a dangerous drug in her system because her mother used that drug eight to ten hours before her birth. The fact that Valerie is at risk because of her mother's actions before her birth in no way negates or dilutes this compelling state interest.

---

[3] We note, however, that in such cases, as with all petitions for neglect and termination of parental rights, the requirements of General Statutes §§ 46b-120 and 17a-112 must be met before an adjudication of neglect or an order of termination can enter. Our decision today holds only that, in cases where the statutory requirements have been met, a mother's prenatal conduct can be the basis of such a finding.

[4] In accordance with *Roe* v. *Wade,* 440 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), our legislature recently passed Public Acts 1990, No. 90-112, that prohibits, in pertinent part, the performance of an abortion "upon a pregnant woman after viability of the fetus except when necessary to preserve the life or health of the pregnant woman."

Other courts that have addressed this issue have reached similar conclusions. In *In re Stefanel Tyesha C.*, 157 App. Div. 2d 322, 556 N.Y.S.2d 280 (1990), a New York appellate court reversed the family court's dismissal of petitions alleging causes of action for neglect based on the mothers' admitted use of drugs during their pregnancies, the childrens' positive toxicology for cocaine at birth and the failure of the mothers to be enrolled in a drug rehabilitation program at the time the petitions were filed. Id., 328. The court reasoned that " '[t]he important state interests in preservation of life, the potentiality of life, and child welfare lend resolute support to the argument that child abuse and neglect statutes should include unborn children. . . .' " Id. A California court noted the "severe problem of babies born under the influence of dangerous drugs due to their mothers' use of such drugs during pregnancy" and held that "a child in every context, a living child must be afforded the protection of the juvenile court even though he is at risk because of his mother's actions before birth." *In re Troy D.*, 215 Cal. App. 3d 889, 898–99, 263 Cal. Rptr. 869 (1989); see also *Matter of Baby X*, 97 Mich. App. 253, 293 N.W.2d 736 (1980); *In re Ruiz*, 27 Ohio Misc. 2d 31, 500 N.E.2d 935 (1986). For these reasons, as well as for the reasons stated above, we hold that a petition for neglect or termination of parental rights can be supported solely by evidence of a mother's prenatal conduct.

The respondent also argues that her constitutional rights of due process and equal protection have been impermissibly infringed by the trial court's application of General Statutes §§ 46b-120 and 17a-112 to allow petitions to be predicated solely on prenatal conduct. More specifically, she claims that (1) she was given no notice that her prenatal conduct could result in a finding that her child was neglected or that her parental

rights with respect to that child could be terminated, and (2) those statutes have not been applied equally to all mothers in the state whose babies suffer from cocaine withdrawal after birth. Because the respondent failed to raise these claims at trial, she seeks their review as questions "where consideration . . . is in the interest of the public welfare or of justice between the parties." *Cahill* v. *Board of Education,* 187 Conn. 94, 100, 444 A.2d 907 (1982); Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

We need not determine whether the respondent's constitutional claims qualify for plain error review because these claims have not been fully developed and supported in her appellate brief. The respondent cites neither facts nor law that would allow this court to consider her claims adequately. Therefore, we need not, and do not, address these claims. See Practice Book § 4065; *Liscio* v. *Liscio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987); *State* v. *Franklin,* 20 Conn. App. 96, 99, 563 A.2d 1383 (1989).

The respondent's final challenge is directed at the trial court's findings that (1) the fetus' passage of meconium was caused by her ingestion of cocaine prior to delivery, (2) Valerie suffered serious physical injury, and (3) Valerie and the respondent had not developed a parent-child relationship and it would not be in Valerie's best interest to allow time for such a relationship to develop. It is axiomatic that "[a] reviewing authority may not substitute its findings for those of the trier of facts." *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990);

*Lerner* v. *Ceslik,* 17 Conn. App. 369, 372, 553 A.2d 1142 (1989). "On appeal, we determine only whether in light of the evidence in the whole record, the court's decision was clearly erroneous. We will not retry the facts. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Hart, Nininger & Campbell Associates, Inc.* v. *Rogers,* 16 Conn. App. 619, 627, 548 A.2d 758 (1988).

The trial court found two grounds for termination. The second ground was based on the court's findings that there was no ongoing parent-child relationship. General Statutes § 45a-717 (f) (3). The trial court found that after the birth of Valerie the respondent refused inpatient drug treatment and dropped out of the outpatient program after five sessions when she tested positive for cocaine, did not bond with the child, had psychological problems apart from her chronic drug problems, which resulted in chronic joblessness and homelessness, and did not adhere to the court articulated expectations of drug treatment, regular visitation and adequate housing on which Valerie's return was premised. In finding that it would be detrimental to the best interest of this child to allow further time for the reestablishment of the parent-child relationship, the trial court determined that it was highly probable, due to the drug and psychological problems of the respondent, that to wait a year for a favorable outcome would be clearly and convincingly detrimental to the well being of a fragile infant whose need for permanency is secondary only to her need for adequate physical care. There was overwhelming evidence to substantiate the trial court's finding that there was no ongoing parent-child relationship between Valerie and the respondent and that to allow further time for the estab-

lishment of the parent-child relationship would be detrimental to Valerie's best interests. General Statutes § 45a-717 (f) (3). The trial court found two grounds for termination when only one ground need be found. General Statutes § 45a-717.