[830 NYS2d 749]

SARAH ELIZABETH LEIGHTON et al., Appellants, v CITY OF NEW YORK et al., Respondents.

Second Department, February 20, 2007

### APPEARANCES OF COUNSEL

*Siben & Ferber*, Hauppauge (*Kenneth Ording* and *David M. Schwarz* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel*, Brooklyn (*Barry P. Schwartz* and *Deborah Brenner* of counsel), for respondents.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether the law allows a cause of action for

damages allegedly sustained by the infant plaintiff as a result of an accident which occurred when she was in utero and not viable outside the womb. We hold that the law allows such a cause of action, since the accident occurred after the infant plaintiff's conception and the infant plaintiff was thereafter born alive.

On January 20, 1999, the infant plaintiff's mother, the plaintiff Esther Portalatin-Leighton, a school teacher who was four months pregnant at the time, allegedly fell as a result of a defective toilet seat. Five minutes after her fall, she felt cramping in her lower abdomen and was taken to Methodist Hospital where she was treated and released. Thereafter, on April 4, 1999, the infant plaintiff was born three months prematurely.

The plaintiffs filed a notice of claim on April 7, 1999. However, the instant action to recover damages, inter alia, for personal injuries, was not commenced until July 23, 2004.

By notice of motion dated April 11, 2005, the defendants moved to dismiss the complaint on the grounds that the mother's causes of action were time-barred and the infant plaintiff failed to state a cause of action.

The court dismissed the mother's causes of action as time-barred by the one-year-and-90-day statute of limitations set forth in General Municipal Law § 50-i. That determination is not challenged on appeal and therefore, is not before this Court.

With respect to the infant plaintiff, the defendants claimed she had no cause of action on the ground that "at the time of the alleged breach of duty [she] was a non-viable fetus," and therefore, the defendants did not owe her a duty of care. The plaintiffs in opposition asserted that the defendants were attempting "to add in a new requirement to negligence actions."

The Supreme Court, in the order appealed from, agreed with the defendants that "[i]n order for the infant plaintiff to have a cognizable cause of action it must be a viable fetus at the time of the injury and must be later born alive." Since the infant plaintiff was only a 14-week fetus at the time of the accident who would not have been viable outside the womb had she been born at that juncture, the Supreme Court found that she had no cause of action. We reverse the order insofar as appealed from.

In *Drobner v Peters* (232 NY 220, 224 [1921]), the Court of Appeals dismissed an action brought by an infant plaintiff to recover damages allegedly sustained as a result of an accident which occurred 11 days before his birth on the ground that the defendant owed no duty to an unborn child apart from the duty

to avoid injuring his mother. That determination was overruled by the Court of Appeals in *Woods v Lancet* (303 NY 349 [1951]).

The issue in *Woods v Lancet* (*supra* at 356-357) was whether an infant plaintiff could recover damages for injuries allegedly sustained in his mother's womb during the ninth month of pregnancy. The Court of Appeals reversed an order dismissing the infant plaintiff's complaint and overruled its decision in *Drobner v Peters* (*supra*). In so doing, the Court of Appeals noted that *Drobner v Peters* (*supra*) was based upon three principles: (1) lack of precedent in favor of sustaining a cause of action brought by an infant plaintiff for injuries sustained in utero, (2) difficulties in proving causation, and (3) the "purely theoretical" objection "that a foetus in utero has no existence of its own separate from that of its mother, that is, that it is not a being in esse" (*Woods v Lancet, supra* at 356 [internal quotation marks omitted]).

In answer to these concerns, the Court of Appeals found (1) negligence is a question of common law which may be revised by the courts, (2) difficulties in proving causation should not destroy a legal right, and (3) the case could be decided without dealing with the larger question of whether a fetus has an existence of its own separate from its mother. Apparently to avoid the larger question of whether the fetus was "a being in esse" (*id.*), the Court limited the applicability of its ruling "to prepartum injuries to . . . viable children . . . capable of being delivered and of remaining alive, separate from its mother" (*id.* at 357).

Thereafter, the Appellate Division, Third Department, in *Kelly v Gregory* (282 App Div 542 [1953]), held that an infant plaintiff could recover damages for injuries allegedly sustained in an accident during the third month of the mother's pregnancy, so long as he could prove causation. In that case, the Court noted that "no case imposed as a necessity . . . that actual miscarriage must coincide with the injury" (*id.* at 544). The Court further noted that lives in being for inheritance purposes included unborn children and "no distinction between viability or nonviability was attempted to be drawn in determining the point of vestiture of a legal right" (*id.* at 545).

The principles enunciated in *Kelly v Gregory* (*supra*) were adopted by other jurisdictions (*see e.g. Hornbuckle v Plantation Pipe Line Co.,* 212 Ga 504, 93 SE2d 727 [1956]: *Daley v Meier,* 33 Ill App 2d 218, 178 NE2d 691 [1961]; *Bennett v Hymers,* 101 NH 483, 147 A2d 108 [1958]; *Smith v Brennan,* 31 NJ 353, 157

A2d 497 [1960]; *Sinkler v Kneale,* 401 Pa 267, 164 A2d 93 [1960]) and by the Restatement of Torts (*see* Restatement [Second] of Torts § 869), which states that "[o]ne who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive." This principle is "not limited to unborn children who are 'viable' at the time of the original injury, that is, capable of independent life . . . [i]f the tortious conduct and the legal causation of the harm can be satisfactorily established" (*id.* § 869, Comment *d*).

Based upon the question of viability posed in *Woods v Lancet* (*supra*), questions arose in this state as to whether damages were recoverable for the wrongful death of a stillborn fetus that was "viable" and could have survived outside the womb at the time of the injury, had the injury not occurred (*see Matter of Logan,* 3 NY2d 800; *Endresz v Friedberg,* 24 NY2d 478 [1969]). In *Endresz v Friedberg* (*supra* at 483), the Court of Appeals determined that a wrongful death action cannot be maintained for the death of an unborn child: the child has to be born alive. In reaching that conclusion, the Court of Appeals stated that its decision in *Woods v Lancet* (*supra*) "simply brought the common law of this State into accord with the demand of natural justice which requires recognition of the legal right of every human being to begin life unimpaired by physical or mental defects resulting from the negligence of another" (*Endresz v Friedberg, supra* at 483). Thus, the crucial factor is whether the fetus injured in utero is thereafter born alive.

The defendants, in asserting that a child born alive cannot recover for injuries sustained in utero unless the child is capable of viability outside the womb at the time of injury, cite cases relating to the constitutionality of limits on abortion (*see Planned Parenthood of Southeastern Pa. v Casey,* 505 US 833, 860 [1992]; *Roe v Wade,* 410 US 113, 160 [1973]). In 1973, the Supreme Court of the United States in *Roe v Wade* (*supra*) noted that "the traditional rule of tort law denied recovery for prenatal injuries even though the child was born alive" (*id.* at 161, citing Prosser, Torts § 55, at 336-338 [4th ed]). However, the Supreme Court acknowledged that the traditional rule "has been changed in almost every jurisdiction" (*id.* at 161). As noted in Prosser, Torts (§ 55, at 336), by 1971 the traditional rule had been discarded in "the most spectacular abrupt reversal of a well settled rule in the whole history of the law of torts" in favor of a rule which permitted a child, if born alive, to maintain an action to recover damages for personal injuries sustained in utero.

This Court, when faced with a controversy over the constitutionality of legalization of abortion in this state, was able to reconcile legal abortion with the principle established in *Kelly v Gregory* (*supra*) that "the nonviable unborn child" injured in utero thereafter born alive may sue to recover damages (*Byrn v New York City Health & Hosps. Corp.*, 38 AD2d 316, 329 [1972], *affd* 31 NY2d 194 [1972]), by holding that "legal personality is not synonymous with separate and vital existence within the womb [and] depending on the circumstances involved, public policy and other factors, legal personality will be accorded or withheld as these extrinsic considerations demand." (*Id.*) The Court of Appeals, in affirming our determination, noted that while "unborn children have never been recognized as persons in the law in the whole sense," nevertheless "[f]etuses, if they are born alive, have been entitled in modern times to recover in tort for injuries sustained through the host mother" (*Byrn v New York City Health & Hosps. Corp.*, 31 NY2d at 200, citing *Kelly v Gregory, supra*).

Abortion cases are generally distinguishable from the instant case, since fetuses which are aborted are not born alive (*see generally Group Health Assn., Inc. v Blumenthal*, 295 Md 104, 453 A2d 1198 [1983]). However, if the abortion fails and causes injury to the fetus who is later born alive, the child may have a cause of action sounding in medical malpractice to recover damages for the injuries sustained (*see Sheppard-Mobley v King*, 4 NY3d 627 [2005]).

In *Albala v City of New York* (54 NY2d 269, 271 [1981]), relied upon by the Supreme Court, the Court of Appeals held that "no cause of action for preconception tort is cognizable" under the common law of this State. Accordingly, the incident allegedly giving rise to liability must occur after conception when there is, in fact, a fetus (*see Enright v Eli Lilly & Co.*, 77 NY2d 377 [1991], *cert denied* 502 US 868 [1991]; *Hymowitz v Eli Lilly & Co.*, 73 NY2d 487 [1989], *cert denied* 493 US 944 [1989]).

In support of its contention that it owed no duty to the infant in utero, the defendant cites *Widera v Ettco Wire & Cable Corp.* (204 AD2d 306 [1994]). In that case, the infant plaintiff alleged that his father was exposed to toxic chemicals at his work site, and the infant was exposed to those chemicals when his mother washed the father's contaminated clothes while he was in utero. This Court, in affirming the dismissal of the infant's cause of action sounding in common-law negligence, held that extending the common-law duty to provide a safe place to work to the

infant plaintiff would "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs" (*id.* at 307). This case merely stated well-settled law that the duty to provide a safe place to work does not extend to members of the worker's family or household or other third parties who were not physically present on the premises (*see Matter of New York City Asbestos Litig.*, 5 NY3d 486 [2005]). This principle has no application to the issues in the instant case (*see Mann v Andersen Prods.*, 246 AD2d 68 [1998]).

Since the infant plaintiff was born alive and alleges that her injuries resulted from an accident which occurred while she was in utero, she has stated a cause of action. Accordingly, the order is reversed insofar as appealed from, on the law, and that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (7) to dismiss the infant plaintiff's cause of action is denied.

SPOLZINO, J.P., RITTER and SKELOS, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the defendants' motion pursuant to CPLR 3211 (a) (7) which was to dismiss the infant plaintiff's cause of action is denied.