Sidney Squire, J.
In this case, each of the two claimants (a mother and her baby) has pleaded a separate cause of action. The defendant moves to dismiss the infant’s cause of action, brought by her maternal grandfather as guardian ad litem appointed by an order of this court. The State does not pres *825 ently attack the other cause of action asserted by the infant’s mother through her father as guardian ad litem, similarly appointed by another order.
The infant’s cause, denominated the “ Second Cause of Action”, is predicated on the State’s alleged neglectful care and supervision over the mother, Lorene Williams, while a patient of the defendant at Manhattan State Hospital located on Welfare Island. It is averred that the defendant’s failure “ to provide adequate, sufficient, and proper care and supervision over her while she was in the custody of the State ” and ‘ ‘ failing to protect and safeguard her health and physical body from attack and harm from others, which negligence resulted in the infant Christine Williams being conceived, being born and being born out of wedlock to a mentally deficient mother. ’ ’
Paragraph 15 of the claim (pleading) further pleads that said infant was 11 deprived of property rights; deprived of a normal childhood and home life; deprived of proper parental care, support and rearing; caused to bear the stigma of illegitimacy and has otherwise been greatly injured all to her damage in the sum of $100,000.”
The defendant does not now assail the mother’s (“First”) cause of action wherein her guardian ad litem seeks $50,000 for the claimed carnal assault of the mother while a patient at said hospital, resulting in the pregnancy and birth allegedly due to the State’s insufficient care and supervision of said mentally ill patient. This legal posture is not inconsistent with the instant motion. In effect, the State says that if proven, there is a recognized cause of action in favor of the mother but that regardless of proof, an infant has no cause of action such as pleaded at bar. The defendant emphasizes that the claimed cause of action of the infant has never been successfully pleaded in any other case although there have been trials of a mother’s cause of action.
McCandless v. State of New York (3 A D 2d 600 [3d Dept., 1957], affd. 4 N Y 2d 797) involved the trial of two causes of action of a sexually assaulted mentally ill patient; one, for negligent supervision of the lady while a patient at a State hospital, and the second, for the performance of an operation to induce an abortion without the consent of claimant or her parents. The trial court (6 Misc 2d 391) granted judgment on each cause of action. The Appellate Division reversed on the negligence cause because it was “ not supported by a preponderance of the evidence ” (p. 603), but sustained the second cause of action although it reduced the amount of the award. As noted, the Court of Appeals affirmed.
*826 About three years later, Boykin v. State of New York (Claim No. 35262-A) was tried before me. There, another lady patient, an infant, sued the State for its lack of care because a sexual assault in a State hospital resulted in pregnancy and birth of a baby girl. The patient’s father sued for his expenditures and anticipated financial obligation to care for his daughter whom he was supporting. Both causes of action demanding $300,000 were dismissed by me because the respective claimants had failed to prove their several causes of action.
On the motion at bar, only the question of a claimant’s pleading is presented for determination. It is not my present province to consider the merits of claimants’ claims or the credibility of any witness. So, too, now I cannot weigh any possible defense or assay anticipated evidence unless the pleading alleges an utter impossibility. On a motion to dismiss a pleading, one is confined to the boundaries of the pleaded matters, which are accepted as though proven. Our Appellate Division, Third Department, in First Nat. Bank of Morrisville v. International Radiant Corp. (5 A D 2d 1043, 1044 [April, 1958]) succinctly and effectively wrote: ‘ ‘ The motion admits all facts alleged in the complaint and inferences that may be fairly drawn. (Greef v. Equitable Life Assur. Soc., 160 N. Y. 19; see, also, Glassman v. Glassman, 309 N. Y. 436, 439.) In Oleet v. Pennsylvania Exch. Bank (285 App. Div. 411, 413) the court said: ‘ The transaction must be determined in its totality ’. The merits of the action are not before the court on this motion. In Schwartz v. Heffernan (304 N. Y. 474, 482) * * * the court said: ‘By moving to strike the pleading for insufficiency, defendants have authorized us, temporarily to accept its statements as true. ’ ”
Being compelled to accept the pleaded facts as true, it is my determination that the cause of action sub judice is maintainable. Assuming that the defendant did not give a female mental patient adequate care and supervision at a hospital so that she was not prevented from being sexually attacked, the foreseeable combination of persons and event is actionable negligence and a proximate cause of the pregnancy and birth. The novelty and lack of precedent for declaring that the baby bastard has a cause of action should not be a deterrent to such ruling. Legal writings abound with glorious statements as to what the law is or should be. In simple paraphrase, “ The law is what the law should be.”
About 80 years ago, Judge Yawn, in Kujek v. Goldman (150 N. Y. 176, 178) quoted from Piper v. Hoard (107 N. Y. 73, 76): “ ‘ If the most that can be said is that the case is novel and is not brought plainly within the limits of some adjudged case, *827 we think such fact not enough to call for a reversal of the judgment’ ” and then in his own words at the bottom of page 178, proclaimed that: “ The question, therefore, is not whether there is any precedent for the action, but whether the defendant inflicted such a wrong upon the plaintiff as resulted in lawful damages.”
The separate efforts of capable counsel at bar have evoked no case where liability was fastened on a careless hospital, sovereign State or nonpersonal entity at the suit of the issue of a sexual assault. The closest approach thereto is the somewhat recent interesting case of Zepeda v. Zepeda (41 111. App. 2d 240 [1963], cert. den. 379 U. S. 945 [Dec., 1964]). There, an illegitimate child sued his father because the claimant was created an adulterine bastard. The plaintiff proceeded on two theories: tort and contract. For the latter aspect (not present in our case), young Zepeda alleged that by the defendant’s promise of marriage, his mother was induced to have sexual relations. The promise Avas not kept and could not bo because, unbeknown to the mother, the defendant was a married man. For this as a “ third-party beneficiary” and for the tortious assault alleged, plaintiff sought “ damages for the deprivation of his right to be a legitimate child, to have a normal home, to have a legal father, to inherit from his father, to inherit from his paternal ancestors and for being stigmatized as a bastard.”
The Circuit Court of Cook County dismissed the complaint for failure to state a cause of action. The dismissal order Avas affirmed by the Appellate Court of Illinois, Presiding Justice Dempsey Avriting for the unanimous Bench. The defendant father had moved successfully for the dismissal in the court of original jurisdiction but did not “ contest ” the appeal. At the suggestion of counsel for plaintiff-appellant, on appeal Professor Max Eheinstein of the University of Chicago Law School, “ an internationally recognized authority in family law”, was appointed as amicus curiæ.
Professor Rheinstein submitted a comprehensive brief of 38 pages. The opinion (p. 246) notes the Professor’s comment that: “ Such a claim is novel. There is no statutory or judicial recognition of such a claim in Illinois or elsewhere in the United States. There is no adverse decision either. In fact, no such claim seems ever to have been raised in any court in Illinois, of any other Common Law jurisdiction, or in any Civil Law country either.”
The Presiding Justice Avrote that the contract theory “ is not available to the plaintiff because his complaint sounds in tort ” (p. 247). At for the latter, he declared in the following para *828 graph that “It was not only a moral wrong but was, under the aggravated circumstances of this case, tortious in its nature.” The opinion continues (pp. 247-248): “ Our problem is whether a tort was committed upon the child. Thus, the second question to confront us is, can a tort be inflicted upon a being simultaneously with its conception? ”
At page 248 the opinion resumes: “ Although other branches of the law, such as property and inheritance, recognized the legal existence of a child from the moment of conception, in tort a child was not regarded as a being separate from its mother until it was born. In the last few years a change has taken place in the law pertaining to prenatal physical injuries. From 1884 to 1946 it was universally held that under the common law there could be no recovery for such injuries. Dietrich v. Inhabitants of Northhampton, 138 Mass 14 (1884); Allaire v. St. Luke’s Hospital, 184 111 359, 56 N E 638 (1900). There were occasional dissenting opinions; judges were troubled by the unfairness of holding that a child en ventre sa mere was a human being for inheritance and property rights and not one if it suffered tortious physical injury. It was not until 1946 that a major breakthrough was made under the common law (Bonbrest v. Kotz, 65 F 'Supp 138) although one that received less attention had occurred in 1924 (Kine v. Zuckerman, 4 Pa D & 0 227). Gradually thereafter various jurisdictions permitted actions for prenatal injuries if a child was viable at the time of injury and if it survived birth. Amann v. Faidy, 415 Ill 422, 114 N E 2d 412 (1953). A few states adhered to the Dietrich precedent, but generally the viability of the child at the time of injury became the criterion upon which recovery rested. However, the exact time when viability occurs is uncertain. No medical authority can say with accuracy just at what moment a child can live when separated from its mother. Babies have survived in incubators ever further removed from the time of normal birth. The law has slowly come to realize these uncertainties and the viability test is being abandoned. Now complaints are being sustained where the pleaded facts show that the child was not, or might not have been, viable when the injury occurred. Daley v. Meier, 33 Ill App 2d 218, 178 N E 2d 691 (1961), mother approximately one month pregnant; Smith v. Brennan, 31 N J 353, 157 A 2d 497 (1960); Sinkler v. Kneale, 401 Pa 267, 164 A 2d 93 (1960), first month of pregnancy; Bennett v. Hymers, 101 N H 483, 147 A 2d 108 (1958); Hornbuckle v. Plantation Pipe Line Co., 212 Ga 504, 93 S E 2d 727 (1956), six weeks after conception; Kelly v. Gregory, 282 App. Div 542, 125 N Y S 2d 696 *829 (1953), third month of pregnancy; Damasiewicz v. Gorsuch, 197 Md 417, 79 A 2d 550 (1951).”
It is of interest to note that Presiding Justice Dempsey reviewed and quoted considerably (p. 854) from Piper v. Hoard (107 N. Y. 73 [1887], supra) wherein our Court of Appeals had affirmed an order overruling a demurrer (on motion, before trial) to a complaint. Claimant was a young lady who sued to be declared the owner of the defendant’s portion of a farm because the latter had perpetrated a fraud on claimant’s mother before marriage and prior to claimant’s birth. The defendant had sought to dismiss the case without a trial, maintaining that there was no possible cause of action to be tried because claimant had not even been conceived when the fraud was enacted and sustained no legal damage. The cause of action was held to be maintainable; the defendant being directed to serve an answer so that the case would be tried.
In Zepeda, the opinion continues (p. 255) by tracing the social and legal history of 11 The lot of a child born out of wedlock, who is not adopted or legitimatized ” stressing that “ it would be pure fiction to say that the plaintiff suffers no injury.” Even the nomenclature of a bastard has been changed in many States (p. 256) to more euphonious terms which are also being used in the statutes. “ 1 Bastard ’ is giving way to ‘ illegitimate child,’ to ‘ a child born out of wedlock ’, and to ‘ a natural child ’; ‘ Bastardy Acts ’ have yielded to ‘ Family Acts ’ and ‘ Paternity Acts ’.”
It should not be disputed that (p. 258):
“ Children born illegitimate have suffered an injury. If legitimation does not take place, the injury is continuous. If legitimation cannot take place, the injury is irreparable.
11 The injury is not as tangible as a physical defect but it is as real. This is acknowledged by the State itself. The statutory provisions that a child’s illegitimacy must be suppressed, in certain public records, is an admission of the hardship that can be caused by its disclosure. How often during his life does an illegitimate try to conceal his parentage and how often does he wince in shame when it is revealed! Public opinion may bring about more laws ameliorating further his legal status, but laws cannot temper the cruelty of those who hurl the epithet1 bastard ’ nor ease the bitterness in him who hears it, knowing it to be true. This, however, is but one phase, one manifestation of the basic injury, which is in being born and remaining an illegitimate. An illegitimate’s very birth places him under a disability.’’
*830 However, despite the declarations of these principles of social justice, said opinion, in my legal judgment, then deviated from its logical sequence when it concluded that the cause of action had to be dismissed rather than establish a new cause of action whereby “ the doors of litigation would be opened wider
Presiding Justice Dempsey was alert to the legal dilemma. He wrote (p. 259):
“ Bearing in mind that an action for damages is implicit in any wrong that is called a tort (Prosser, Law of Torts, 2d ed, § 1, pp 2-4) it may be inconsistent to say, as we do, that the plaintiff has been injured by a tortious act and then to question, as we do, his right to maintain an action to recover for this act. This is done deliberately, however, because on the one hand, we believe that the elements of a willful tort are presented by the allegations of the complaint and, on the other hand, we approach with restraint the creation, by judicial sanction, of the new action required by the complaint.
“ Recognition of the plaintiff’s claim means creation of a new tort ”.
I am not quoting the balance of that sentence because of my disinclination to approve the appellation: “ a cause of action for wrongful life There are others, more knowledgable than I, better nomenelators and possessed of appellate stature with a greater right to determine whether the Williams infant has a cause of action and what it should be called.
The Illinois court in Zepeda frankly stated (p. 260) that: “ What does disturb us is the nature of the new action and the related suits which would be encouraged. Encouragement would extend to all others born into the world under conditions they might regard as adverse. One might seek damages for being born of a certain color, another because of race; one for being born with a hereditary disease, another for inheriting unfortunate family characteristics; one for being born into a large and destitute family, another because a parent has an unsavory reputation.”
This approach and these asserted ingenious analogies are not legally impressive to,me. I do not comprehend judicially how the maintenance of the action at bar can be equated with the quoted anticipations. To me, they are unrealistic, illogical and unsupportable. Tangential reasoning should not be utilized as a sledge hammer or chisel to destroy a fundamental right which cries out for justice. Our courts in New York have not been swayed this easily.
A more recent example of the evolution of “ common-sense justice ” is Battalla v. State of New York (10 N Y 2d 237 [1961]) *831 where our Court of Appeals overruled Mitchell v. Rochester Ry. Co. (151 N. Y. 107 [1896]) which had been taught in our law" schools for over half a century and was repeatedly followed and copiously quoted.
In Mitchell it had been decreed that even though the defendant were negligent a plaintiff could not “ recover for injuries occasioned by fright, as there was no immediate personal injury” (p. 109). In Battalla, Judge Burke wrote for the majority (pp. 240-241) that: “It is fundamental to our common-law system that one may seek redress for every substantial wrong. * * 5 Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. ‘ The argument from mere expediency cannot commend itself to a Court of Jiistice, resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one.’ (Green v. Shoemaker & Co., 111 Md. 69, 81.) ”
There, as at bar, the defendant erroneously argued that a Judge or jury would have to resort to speculation as to the amount of damages. Judge Burke declared (p. 242): “ The only substantial policy argument of Mitchell is that the damages or injuries are somewhat speculative and difficult to prove. However, the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions, and ‘ it is beside the point * * 51 in determining sufficiency of a pleading ’ (Woods v. Lancet, 303 N. Y. 349, 356, supra). In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant’s negligence. In the difficult eases, we must look to the quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims. Claimant should, therefore, be given an opportunity to prove that her injuries wore proximately caused by defendant’s negligence.”
I have read and considered many commentaries following; the Illinois opinion in Zepeda. Among them were University of Pennsylvania Law Review (vol. 112, p. 780); Duquesne University Law Review (vol. 2, p. 125); Ohio State Law Journal (vol. 25, p. 145); Iowa Law Review (vol. 49, p. 1005); former Judge Morris Plosoowe’s comment in New York University Law Review (vol. 38, p. 1078); Annual Survey of American Law (1963, p. 434); and American Bar Association Journal (vol. 50, p. 682). These, expounding differing viewpoints, have been helpful.
*832 In the legal research I have not overlooked the knotty problem posed by the defendant’s contention that “ one who is not alive at the time of commission of a tort ’ ’ cannot ‘ ‘ have a right of action for said tort.”
It is my opinion that the time has come for us to face the realities of the situation and untie the knot. The damages sustained by the mother for the assault and pregnancy are obviously distinguishable and separate from those of the infant. If only the mother can receive damages, it is not sufficient to assuage or satisfy the child. Why should 1 ‘ the law ’ ’ be blind to this 1
Until 15 years ago it was the decisional law in our State that a negligent defendant was not liable for injuries caused an infant while in his mother’s womb, even though the damage was so severe “ that he came into this world permanently maimed and disabled.” In 1951, our Court of Appeals, by a divided Bench (5 to 2) in Woods v. Lancet (303 N. Y. 349) overruled Drobner v. Peters (232 N. Y. 220 [1921]). Desmond, J. (now Chief Judge), for the majority in Woods, collated the law in many jurisdictions to demonstrate the ‘1 sufficiency of a complaint alleging prenatal injuries, tortiously inflicted on a nine-month foetus, viable at the time and actually born later ” (p. 352). The opinion specifically stated (p. 357) that: “ we confine our holding in this case to prepartum injuries to such viable children.”
There followed Kelly v. Gregory (282 App. Div. 542 [1953]) in which Bergan, J. (now a Judge of the Court of Appeals) began his opinion for the unanimous Appellate Division, Third Department, as follows: “ The right of a person to recover for a prenatal injury inflicted during the ninth month of the mother’s pregnancy was upheld in 1951 by the Court of Appeals; the ease before us seeks to advance the area of recovery to injury at a much earlier stage of the life of the foetus, to the third month of pregnancy. We think the same rule should govern both cases.”
At the bottom of page 543, the opinion states: “ While the point at which the foetus becomes viable has been of usefulness in drawing some legal distinctions, the underlying problem that has usually troubled the Judges who have written on the subject of recovery for prenatal injuries, has been in fixing the point of legal separability from the mother.
“We ought to be safe in this respect in saying that legal separability should begin where there is biological separability. We know something more of the actual process of conception and foetal development now than when some of the common-law cases were decided; and what we know makes it possible to demonstrate clearly that separability begins at conception.”
*833 The opinion continues (p. 544): “In some groups of cases where it became necessary to decide when the separate legal entity of life began, the Judges at common law took a view quite harmonious with present biological theory. In matters of descent and distribution they held that the child was in being from the time of conception if later born alive under conditions in which continuance in life was to be reasonably expected (10 Am. & Eng. Ency. of Law, p. 624).
“ There were some highly artificial distinctions at law, as for instance, the effect of the birth of a posthumous child on one who took a remainder by purchase and one who took by descent. Some of these are discussed by Judge Kent in Stedfast v. Nicoll (3 Johns. Cas. 18, 26, 27).
‘1 The holding of the Court for the Correction of Errors in that case was that a posthumous child took the estate in remainder by devise in the same manner as if he had been born in the lifetime of his father. This early decision [1802] brought the law of New York on the question of devise in harmony with earlier English statutes and the decisions under them. It recognized that at common law in the case of an unborn child 1 the estate was allowed to vest in such heir until his birth’. (See concurring opinion of Radcliff, J., p. 24.)
“It is to be noticed that no distinction between viability or nonviability was attempted to be drawn in determining the point of vestiture of a legal right. Conception and vestiture became coincidental in the full sense of that word.
“ The Supreme Court of Canada in affirming an award for prenatal injuries based its decision on the general prenatal rights of an injured person and not upon whether the injury had occurred after the biological point of viability had been reached. (Montreal Tramways v. Leveille, 4 D.L.R. 337 [1933].)
‘1 If the child born after an injury sustained at any period of his prenatal life can prove the effect on him of the tort, as for the purpose of this appeal and on the face of the complaint before us we must assume plaintiff will be able to do, we hold he makes out a right to recover.”
At bar, we are sustaining an infant’s pleading which alleges damages tortiously inflicted at his conception. We must not be frightened from this course by the cry of lack of precedent. As the present Chief Judge of our State wrote in the Woods case (p. 355): “ The sum of the argument against plaintiff here is that there is no New York decision in which such a claim has been enforced. Winfield’s answer to that (see [4] U. of Toronto L. J. article, p. [292]) will serve: ‘ if that were a valid objection, the common law would now be what it was in the Plantagenet *834 period.’ And we can borrow from our British friends another mot: ‘ When these ghosts of the past stand in the path of justice clanking their mediaeval chains the proper course for the judge is to pass through them undeterred ’ (Lord Atkin in United Australia, Ltd. v. Barclay’s Bank, Ltd., [1941] A. C. 1, 29). We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice. ’ ’
The evolution of our law whereby outmoded, contradictory and untimely legal pronouncements have yielded to and been replaced by more logical, felicitous and liberal principles, was traced cogently in a recent article by Mr. Justice James D. Hopkins of the Appellate Division, Second Department (editorial pages, N. Y. L. J., Nov. 30 and Dec. 1, 1964). These are encouraging guidelines for me as a Trial Judge sitting in a court of immediate jurisdiction.
At bar, the act or acts of which the infant complains were reasonably foreseeable by the State which owed a duty to its patient and her issue. Where a pleading alleges that a breach of a foreseeable duty was a proximate cause of damages, a claimant should be entitled to a trial.
On the oral argument of this cross motion to dismiss, the movant withdrew that portion of it which relied on OPLR 3211 (subd. [a], par. 2). I now deny the cross motion to dismiss the second cause of action pursuant to OPLR 3211 (subd. [a], par. 7).
Short-form order being signed.