█ Frank Williams, as Guardian ad Litem of Lorene Williams, Appellant, v. State of New York, Respondent. (Claim No. 43856.) — Staley, Jr., J. Appeal from a judgment entered July 10, 1967 upon a decision of the Court of Claims dismissing the claim after a trial of the issue of liability only. The claim is based on negligence resulting in an assault on the person of Lorene Williams, which assault resulted in the birth of her child on December 25, 1962. In October, 1960 Lorene Williams, an unmarried woman 22 years of age, was admitted to Manhattan State Hospital suffering from a psychosis with mental deficiency. At the time of her admission she was five months pregnant. Her intelligence quotient was between 50 and 69, and she was classified in the moderate degree of the moron class of mental defectives with a mental age between four and five years and could neither read nor write. She had had a prior admission to a mental institution in 1959, and had given birth to an illegitimate child in 1955. In addition, she was physically handicapped as a result of infantile paralysis suffered in childhood. The past history in the hospital record stated that her behavior was promiscuous, and her personality was hostile and aggressive. On admission she was placed in a closed ward. In February, 1961 after she had recovered from the post-delivery period, she was classified as suitable for an open ward. The grounds of the hospital consisted of approximately 72 acres which were on an island, and the patients could not leave the grounds, and persons not connected with the hospital were present only with permission. The grounds were patrolled by a safety division of from six to ten men during the daylight hours. There were approximately 60 female patients in the open ward of varying ages and mental capacity. The patient in the open ward was permitted to go to church and the stores on the hospital grounds only in the company of at least two other patients who were regarded as capable of looking after her. Her mental condition had been reviewed on December 11, 1961 at which time it was noted that she was "very nice and cooperative. She followed instructions well and does whatever she is asked to do." The church and stores were in an area that was open and within a 10-minute walk from the building where the patient was housed. In July, 1961 it was discovered that the patient was pregnant, and the only explanation of how she became to be impregnated was the statement of a staff attendant who testified that the patient "told me that when she went to church she went away from the other patients and went with a boy." The patient did not identify the boy, and further stated that he "was outside the church." She did not testify at the trial by reason of her mental retardation. Dr. Diamond, director of the hospital, testified that the policy of the hospital with regard to open wards was in conformance with the policy promulgated by the Department of Mental Hygiene; that where considered psychiatrically suitable, patients were placed in an open ward; that the purpose of the open ward was to help restore the personal dignity of the patient and to get away from the lock and key atmosphere, and to permit the attempt at readjustment to responsibility and free movement about the community; that, if the patient had remained

under lock and key in a locked ward, it would have a harmful effect on her psychiatric condition; that the risk of the patient and any of the females in the open ward coming into contact with a man alone was infinitesimal. Dr. Diamond also testified that in his opinon the treatment and supervision given to the patient conformed to acceptable medical practices at that time. The appellant contends that the hospital was negligent by reason of its failure to provide the care and protection that the patient's condition demanded. In *Kardas* v. *State of New York* (24 A D 789) it was claimed that the State was negligent for the death by suicide of a patient who was clinically thought to be suicide prone, but upon admission to the state hospital, after examination by staff physicians, was diagnosed as not a suicide risk. He thereafter escaped and committed suicide. The court dismissed the claim and stated: "However, as the diagnosis was that the decedent's condition did not present a risk of suicide, the diagnosing and treating physicians were under no duty, for purposes of preventing suicide, to require close observation and confinement to the ward as precautions against suicide and hence the State, having through its physicians, made a diagnosis of no suicidal tendency, was under no duty to guard against suicide and, having been under no duty, may not be held liable in negligence for the decedent's death." (See, also, *Kubas* v. *State of New York*, 198 Misc. 130, affd. 278 App. Div. 887.) The use of the open door policy in psychiatric hospitals has been widely accepted as favoring rehabilitation of the mentally ill. (*McCandless* v. *State of New York*, 3 A D 2d 600, affd. 4 N Y 2d 797; *Seavy* v. *State of New York*, 21 A D 2d 445, affd. 17 N Y 2d 675.) The decision to place the patient involved here in an open ward was a medical judgment. After finding that she was a proper patient for an open ward, there was no reason to place more restraints on her that was usual for that type of ward. Liability on the part of the State does not arise if such medical judgment was, in fact, erroneous. (*St. George* v. *State of New York*, 283 App. Div. 245, affd. 308 N. Y. 681; *Taig* v. *State of New York*, 19 A D 2d 182; *Higgins* v. *State of New York*, 24 A D 2d 147; *Dennison* v. *State of New York*, 28 A D 2d 608.) The appellant's claim that there was negligence on the part of the State which resulted in the assault on the patient, is not supported by a preponderance of the evidence; indeed, as the Court of Claims found, on all the credible evidence, the State was not negligent. The appellant further contends that the hospital was negligent in not discovering the patient's pregnancy sooner and, upon such discovery, to take appropriate steps with respect to it. After she became pregnant, the hospital was under no duty to change the condition and prevent the birth of the child. (Cf. *McCandless* v. *State of New York*, *supra*.) Judgment affirmed, without costs. Gibson, P. J., Herlihy, Aulisi, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Staley, Jr., J.